IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | |
|---|---|
| **BRADDIE E. SULLIVAN #325641,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) NO. 1:24-CV-00022 |
| v. | ) |
| | ) JUDGE CAMPBELL |
| **CONNIE BENSON,** | ) MAGISTRATE JUDGE HOLMES |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION AND ORDER**

Braddie E. Sullivan, an inmate of the South Central Correctional Facility in Clifton, Tennessee, filed a pro se complaint pursuant to 42 U.S.C. § 1983 against Connie Benson, alleging violations of Plaintiff's civil rights. (Doc. No. 1).

Plaintiff also filed two Applications for Leave for Proceed In Forma Pauperis ("IFP Application") (Doc. Nos. 7, 9) and a Motion to Appoint Counsel. (Doc. No. 10). The Court must begin with the filing fee.

**I. FILING FEE**

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). From a review of Plaintiff's IFP Application and supporting documentation (Doc. No. 9), it appears that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 9) is **GRANTED**. His previously-filed IFP Application, which is unsigned, (Doc. No. 7) is **DENIED AS MOOT**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-

1

plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at the South Central Correctional Facility to ensure that the custodian of Plaintiff's inmate trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the

custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MOTION TO APPOINT COUNSEL

Plaintiff has filed a Motion to Appoint Counsel. (Doc. No. 10). The Supreme Court has held that "an indigent's right to appointed counsel . . . exists only where the litigant may lose his physical liberty if he loses the litigation." *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 25 (1981). Thus, unlike in criminal proceedings, there is no constitutional right to an appointed counsel in a civil action, such as this action. *Willett v. Wells*, 469 F. Supp. 748, 751 (E.D. Tenn. 1977), *aff'd*, 595 F.2d 1227 (6th Cir. 1979); *see Williamson v. Autorama, Inc.*, No. 91-5759, 947 F.2d 947 (6th Cir. 1991) (citing *Willett* favorably). The appointment of counsel for a civil litigant is a matter within the discretion of the district court and will occur only under exceptional circumstances. *Lavado v. Keohane*, 992 F.2d 601, 604-05 (6th Cir. 1993).

In support of his request for counsel, Plaintiff states that his permanent placement in segregation "inhibits his access to adequate resources to prosecute the instant case," his complaint has passed initial screening and is not frivolous, he is not well versed in the law, and he is unable to afford counsel. (Doc. No. 10 at 1-2). Plaintiff is mistaken that his complaint has survived the initial screening required by the Prison Litigation Reform Act; that screening has not yet occurred. Otherwise, Plaintiff's circumstances are typical to most incarcerated pro se plaintiffs. At this time, Plaintiff has not demonstrated exceptional circumstances warranting the appointment of counsel. His Motion to Appoint Counsel (Doc. No. 10) is **DENIED WITHOUT PREJUDICE**.

## III. PLRA SCREENING OF THE COMPLAINT

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)). Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

**A. Section 1983 Standard**

Plaintiff brings his claims under 42 U.S.C. § 1983 which creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983.

4

Case 1:24-cv-00022   Document 11   Filed 02/25/26   Page 4 of 11 PageID #: 78

**B. Facts Alleged in the Amended Complaint**

The allegations of the complaint are assumed true for purposes of the required PLRA screening.

The complaint alleges that, on January 12, 2024, Defendant Connie Benson, a mental health therapist, performed a "cross-contaminated drug screen" on Plaintiff. (Doc. No. 1 at 1). After testing other inmates' samples, Bension did not change gloves before handling Plaintiff's sample. This contaminated test showed Plaintiff as having a "dirty" screen. (*Id.*) A subsequent drug screen showed Plaintiff to be drug-free.

Plaintiff filed a grievance regarding the matter and was found "not guilty" by the prison disciplinary board due to the cross-contamination. (*Id.* at 2). In response to Plaintiff's filing of a grievance, Benson threatened to send Plaintiff to "a gang infested pod . . . thus endangering [his] life." (*Id.* at 3).

As relief, the complaint seeks $1,000,000 and for Benson to be removed from Enterprise a pod.

**C. Analysis**

The complaint alleges two claims: a due process claim related to the allegedly contaminated drug test and a retaliation claim, both filed under 42 U.S.C. § 1983 and both brought against Connie Benson in her individual and official capacities.

1. <u>Due Process Claim</u>

Plaintiff alleges that his constitutional rights were violated when the drug test conducted at the South Central Correctional Facility by Connie Benson did not produce an accurate result. These allegations do not state a constitutional due process claim. *See Gonzales v. Warden, Southern Ohio Correctional Facility*, No. 1:17-cv-70, 2017 WL 1048129, at *2 (S.D. Ohio Feb. 28, 2017) (finding that, "[a]s an initial matter, plaintiff ha[d] not stated a claim that raises to the level of a

constitutional violation to the extent he challenges the drug testing conducted as SOCF because it is not 100%, as demonstrated by the one false positive result that plaintiff received in December 2016.") (citing *Higgs v. Bland*, 888 F.2d 443, 449 (6th Cir. 1989) (citing *Spence v. Farrier*, 807 F.2d 753, 756 (8th Cir. 1986); quoting *Mackey v. Montrym*, 443 U.S. 1, 13 (1979)) (in rejecting prisoners' claims in consolidated class actions challenging disciplinary actions taken against prisoners based on urinalysis tests for drugs, the Sixth Circuit reasoned that the "reliability of the . . . test has repeatedly been found to meet due process standards," which have "'never been construed to require that the procedures used to guard against an erroneous deprivation of a protectable property or liberty interest be so comprehensive to preclude any possibility of error'") (internal quotation marks omitted); *Martin v. Wilkinson*, No. 93-3709, 1994 WL 20096, at *1 (6th Cir. Jan. 24, 1994) (rejecting the Ohio prisoner's claim that he was forced to submit to an inaccurate drug test in violation of his constitutional rights); *Wells v. Dane Cnty.*, No. 06-C-345-S, 2007 WL 128333, at *4 (W.D. Wis. Jan. 11, 2007) (pointing out that although a "false positive urine test and the failure to retest the urine before detaining plaintiff may have been the result of negligence," it did not, as the plaintiff had conceded, "rise to the level of a constitutional violation"); *see also Easter v. Saffle*, 51 F. App'x 289, 289 (10th Cir. 2002) ("Though the risk of false positives has not been entirely eliminated, . . . [the] use of the test results may be relied upon as sufficient evidence to warrant prison discipline."); *Peranzo v. Coughlin*, 850 F.2d 125, 126 (2d Cir. 1988) (per curiam) (in a case where the evidence established that the testing procedure of an initial test and a subsequent confirming test was at least 98% accurate, the Second Circuit affirmed the district court's holding that although "the risk of false positives ha[d] not been entirely eliminated, . . . use of the test results [could] be relied upon as sufficient evidence to warrant prison discipline" and the prisoner's "detention prior to the disciplinary hearings . . . conformed to the

requirements of due process"); *Spence*, 807 F.2d at 756 (and numerous cases cited therein) (in holding in accordance with the cited cases that urinalysis testing for drugs is "sufficiently reliable to meet the requirements of the due process clause" for prison disciplinary sanctions, the Eighth Circuit stated that "[a]lthough it is conceivable that an inmate could be unjustly disciplined as a result of [the] tests, the margin of error is insignificant in light of institutional goals" and "[s]tates need not implement all possible procedural safeguards against erroneous deprivation of liberty when utilizing results of scientific testing devices in accusatory proceedings'"); *Rivas v. Cross*, No. 2:10cv98, 2011 WL 1601289, at *7 (N.D. W. Va. Apr. 1. 2011) (Report & Recommendation) (citing *Spence*) ("the fact that the [prison's drug] tests may not be 100% reliable is not grounds for [federal habeas] relief" challenging a prison disciplinary sanction), *adopted*, 2011 WL 1601288, *4 (N.D. W. Va. Apr. 27, 2011), *aff'd*, 448 F. App'x 332 (4th Cir. 2011) (per curiam)).

The complaint does not allege that Plaintiff was punished as a result of the first drug test result (that later proved to be inaccurate). However, even if the Court assumes for purposes of this screening that Plaintiff was punished, the complaint still fails to state a due process claim upon which relief can be granted. *See Gonzales*, 2017 WL 1048129, at *3 (citing *Wells*, 2007 WL 128333, at *4 (holding the plaintiff's due process rights were not violated when she was "mistakenly detained" for violating supervised release based on a false positive drug test result because the deputies "reasonably relied on the test results to suspect plaintiff of a rule violation"); *see also Higgs*, 888 F.2d at 449 (concluding with "little difficulty" that "the presence of a positive [urinalysis] test constitutes 'some evidence' from which the [prison disciplinary] board could conclude that a tested inmate was guilty of the offense of drug use"); *Rivera v. Wholrab*, 232 F. Supp.2d 117, 123-24 (S.D.N.Y. 2002) (citing *Peranzo*) ("drug test results . . . , even on their own, . . . constitute sufficient evidence of guilt of drug use in prison disciplinary proceedings")). Courts

7

have uniformly held that due process is satisfied for a disciplinary sanction based on the results of a single drug test. *See Gonzales,* 2017 WL 1048129, at *3 (citing *Easter*, 51 F. App'x. at 289) (in affirming the screening dismissal of a prisoner complaint challenging a disciplinary sanction imposed after the plaintiff tested positive for drugs by means of a urinalysis, the Tenth Circuit rejected the plaintiff's claim that a blood test should have been performed to confirm the reliability of the test result because a "*single* urinalysis amounts to 'some evidence' and thus satisfies due process") (emphasis in original); *White v. Stansil*, No. 2:15cv242, 2016 WL 4009954, at *5-6 (E.D. Cal. July 25, 2016) (and numerous cases cited therein) (pointing out that "numerous courts have held that a prisoner does not have a constitutional right to an additional drug test to verify the results of an initial positive test" in rejecting a habeas petitioner's claim challenging a prison disciplinary sanction imposed after the petitioner's initial urine sample tested positive for methadone)).

Based on the foregoing, Plaintiff's due process claim based on the results of his drug test fails to state a claim upon which relief can be granted under Section 1983. The claim therefore will be dismissed against Defendant Benson in her individual and official capacities.

2. Retaliation Claim

The complaint also alleges that, in response to Plaintiff's filing of a grievance concerning the first drug test she administered to Plaintiff, Defendant Benson threatened to send Plaintiff to "a gang infested pod . . . thus endangering [his] life." (Doc. No. 1 at 3).

A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. *Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999). To establish a prima facie case of retaliation within the context of Section 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him

that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. *Id.* at 394-99. A plaintiff has the burden of proof on all three elements. *Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003).

In *Hill v. Lappin*, the Sixth Circuit reversed the district court's dismissal of a First Amendment retaliation claim on initial review, emphasizing that the essential elements of such a claim are not overly difficult to establish, "especially in light of the 'indulgent treatment' that '[c]ourts are instructed to give . . . to the 'inartfully pleaded' allegations of pro se prison litigants." 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Pasley v. Conerly*, 345 F. App'x 981, 986 (6th Cir. 2009)). The Court of Appeals indicated that, where the facts alleged in a prisoner's complaint are sufficient to support these elements, the claim should go forward even if the inmate "fails to explicitly state" that he is making a First Amendment retaliation claim or does not "make an effective argument for that claim in his . . . complaint." *Id.* (citing *Pasley*, 345 F. App'x at 986).

Filing grievances through an inmate grievance process is protected conduct. *See Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). A prison employee's threat to transfer an inmate to a "gang infested pod" would likely have a strong deterrent effect on a prisoner's protected activity. And Defendant Benson allegedly threatened Plaintiff directly after Plaintiff filed his grievance concerning Benson's drug testing. *See Hill*, 630 F.3d at 475-76 (retaliatory motive can be supported by circumstantial evidence including "the temporal proximity between the prisoner's protected conduct and the official's adverse action") (citing *Holzemer v. City of Memphis*, 621 F.3d 512, 525-26, (6th Cir. 2010)); *see also Arrington v. Wickstrom*, 2012 WL 1029957 (W.D. Mich. Mar. 27, 2012) (where plaintiff alleged that defendant retaliated against him by planting contraband in his cell and threatened that filing lawsuits would cause more pain, concluding those

9

Case 1:24-cv-00022 Document 11 Filed 02/25/26 Page 9 of 11 PageID #: 83

allegations were sufficient to permit a jury to find that defendant planted the contraband). The Court therefore finds that the complaint states a colorable First Amendment retaliation claim under Section 1983 against Connie Bension in her individual capacity. That claim will proceed.

The complaint also names Benson as a Defendant in her official capacity. The Court can infer from the allegations of the pro se complaint that Benson is an employee of the South Central Correctional Facility. Thus, Plaintiff's official-capacity claim against Benson is essentially a claim against CoreCivic itself. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (citing *Ky. v. Graham*, 473 U.S. 159, 165 (1985)) ("[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent."). Because it "performs the traditional state function of operating a prison," CoreCivic "acts under the color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). To state a claim against CoreCivic, the plaintiff must allege that his "'constitutional rights were violated and that a policy or custom' of [CoreCivic] 'was the moving force behind the deprivation of [his] rights." *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)).

Here, Plaintiff makes no such allegation regarding a "policy or custom" of CoreCivic. Thus, Plaintiff fails to state a claim against CoreCivic, and his official-capacity retaliation claim against Benson will be dismissed.

### IV. CONCLUSION

Having conducted the screening required by the PRLA, the Court finds that the allegations of the complaint state a colorable First Amendment retaliation under Section 1983 against Defendant Connie Benson in her individual capacity. This action shall proceed as to that claim.

In all other respects, the complaint fails to state Section 1983 claims upon which relief can be granted. Accordingly, the Section 1983 claim against Benson in her official capacity (which is

10

Case 1:24-cv-00022   Document 11   Filed 02/25/26   Page 10 of 11 PageID #: 84

a claim against CoreCivic) is **DISMISSED**. Likewise, the individual capacity due process claim against Benson is **DISMISSED**.

The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendant Connie Benson. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on Defendant Connie Benson. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The Court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the Court from dismissing any claim at any time for seasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude Defendant from filing a motion to dismiss under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE